# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH P. CASEY,<br><br>   Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>   Defendant. | Case No. 1:18-cv-00428-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT APPEALING DECISION OF COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 12, 17) |

## I.

## INTRODUCTION

Deborah P. Casey ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from carpal tunnel syndrome status post bilateral release surgery, acromioclavicular joint separation of the right shoulder, tendonitis of the right shoulder, osteoarthritis of the left shoulder, and degenerative disc disease of the lumbar spine. For the

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 7.)

reasons set forth below, Plaintiff's Social Security appeal shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 2, 2013. (AR 99.) Plaintiff's application was initially denied on February 27, 2014, and denied upon reconsideration on July 21, 2014. (AR 129-133, 135-139.) Plaintiff requested and received a hearing before Administrative Law Judge Judith Kopec ("the ALJ"). Plaintiff appeared for a hearing on February 10, 2016. (AR 686-727.) On July 27, 2016, the ALJ found that Plaintiff was not disabled. (AR 17-35.) The Appeals Council denied Plaintiff's request for review on January 25, 2018. (AR 1-4.)

### A.    Hearing Testimony

Plaintiff testified at the February 10, 2016 hearing with the assistance of counsel. (AR 690-717.) Plaintiff was born on November 17, 1958. (AR 690.) She lives at his sister's but goes back and forth between there and her stepfather's home. (AR 690-691.) Plaintiff receives food stamps and help from her family. (AR 691-692.)

Plaintiff has a high school diploma or GED and competed two years of schooling beyond high school. (AR 693.) Plaintiff received her hair stylist license in 1982. (AR 697.) She can read and write in English. (AR 693.) Plaintiff completed some of her application on the computer but had help from an individual at the Social Security Office. (AR 694-695.)

Plaintiff is left handed. (AR 691.) She drives, but not very often because she usually does not have to go anywhere. (AR 692-693.) A lot of times she will get a ride from someone else, but occasionally she does drive. (AR 693.)

Plaintiff worked as a preschool director and teacher from 1995 until June 2004 with Blanche Nosworthy. (AR 695.) She worked as a preschool director and teacher with Kelly Collins-Pipes from August 2005 until June of 2011. (AR 695.) Plaintiff has provided in-home supportive services as an IHSS worker. (AR 696.) Plaintiff was a hairstylist working weekends for about two years before she stopped working in 2011. (AR 696.) Plaintiff worked as a hairstylist until 2013 but did not earn $1,000. a month for the whole year. (AR 697-698.)

As an IHSS worker, Plaintiff would lift her client several times a day who weighed 175 pounds. (AR 698.) She would unpack groceries and do normal day to day living tasks. (AR 698.) Plaintiff would lift up to 50 pounds. (AR 699.)

When she was working as a preschool teacher, Plaintiff would lift a four and a half year old child, between 35 and 40 pounds. (AR 699.) On occasion, she would lift or carry 50 pounds when there were large school purchases. (AR 699.) Plaintiff did not use a computer in her work. (AR 719-720.)

Plaintiff is unable to work because she has been suffering from depression for quite some time. (AR 700.) Her depression makes it hard for her to wake up. (AR 700.) Plaintiff tries to have something prepared for breakfast when she wakes up in the morning because she is diabetic. (AR 701.) Her sister will have something left over and that's easiest because it is the hardest time to move in the morning. (AR 701.) It is hard to move because she has chronic pain in several places in her body. (AR 701.) Her most serious pain is in her lower back. (AR 701.) She has several things that have gotten worse as she has gotten older. (AR 701.) She has sciatica that goes down her left leg. (AR 701.) Her pain at the hearing was about a 6 out of 10. (AR 702.) Plaintiff was sweating like crazy because the pain was worse. (AR 702.)

Plaintiff has good days and bad days. (AR 702.) A good day is when Plaintiff does not want to go right back to bed. (AR 702.) It is hard for Plaintiff to rate her pain because she is no longer taking pain medication and because of that she is not feeling very good. (AR 702.) Plaintiff could not say what her pain would be on a bad day. (AR 703.) Plaintiff was having a bad day the day of the hearing. (AR 703.) Her pain does not stay the same, somedays she is unable to get up. (AR 703.) Sometimes her pain goes higher than six. (AR 703.) Plaintiff does not want to get up about four days a week. (AR 704.) Her pain is never really better than it was the day of the hearing. (AR 704.)

Plaintiff stopped taking her pain medication because she sees so many people with problems from it that she wanted to take a break from it. (AR 704.) She knows someone in her family who is addicted to pain medication. (AR 704.) She stopped taking her pain medication a little over a year ago. (AR 704.) Plaintiff stated that when she was taking medication she felt

different. (AR 704.) In a way sometimes the medication can make your pain worse if you do not take them correctly. (AR 704-705.) Plaintiff will stand up against a wall or lay on something on the floor to help her pain. (AR 705.) Plaintiff will stand against the wall for maybe ten minutes and then she will either sit down or lay down. (AR 706.) She will alternate between standing, sitting, and laying. (AR 705.)

Plaintiff can sit for twenty minutes before she has to change position. (AR 707.) When she gets up in the morning she feels like she cannot even walk to the bathroom or get dressed. (AR 707.) She does not ever go for walks. (AR 707.) Sometimes she will walk around the grocery store. (AR 707.) She is having problems with her feet due to her diabetes and neuropathy. (AR 707.) She also has a sprained ankle she never had taken care of. (AR 707.) She is having a lot of problems with her left foot. (AR 707.) She has pain whether or not she is walking. (AR 707-708.) Plaintiff has burning pain from the diabetes all the time. (AR 708.) Plaintiff is unable to walk a half block. (AR 708.)

Plaintiff also has pain in her back and both shoulders. (AR 708, 716.) She has a tear in both shoulders and would rather not lift her arms above her head. (AR 708, 716.) Sometimes she is able to wash her hair. (AR 709.) Sometimes she has problems pulling up her pants because of her hands and shoulders. (AR 709.) Plaintiff had carpal tunnel surgery on both hands and still has problems with her hands. (AR 709.) Her fingertips are numb after the surgery. (AR 709.) The doctor said that it can take a year after the surgery for that to go away. (AR 717.) She gets a kink in her hands all the time that are painful. (AR 709-710.) She has trouble grasping things because she does not know when it is going to happen. (AR 710.) She is unable to open water bottles or jars but not because of pain. (AR 710.) She will usually have someone help her with buttons. (AR 710.) She does not have zippers on her clothing and uses pull-on pants. (AR 710.) She has someone help her tie her shoes. (AR 710.) Plaintiff can pick something up off the ground but it would be difficult for her. (AR 710.)

Plaintiff used to type, but she really has never been able to type and does not type anymore. (AR 711.) She does not use a computer anymore because she cannot do the keys. (AR 711.)

Plaintiff cannot lay on her shoulders so the doctor gave her something to help her sleep because she had to move around. (AR 705.) She wakes up all the time because she does not feel well. (AR 705.) She tries not to watch television during the day because she does not want to. (AR 711.) She likes to read. (AR 711.) She will read during the day and does household chores when she can. (AR 711.) Plaintiff will wipe off the counter; her sister will help her with laundry; she will do a few dishes; and will heat up a microwave meal. (AR 712.) She does not cook like she used to. (AR 712.)

Plaintiff has difficulty writing. (AR 712.) Plaintiff took an hour to write an important card that she needed to write. (AR 712.) She had to take breaks while writing it. (AR 713.) She can not write very long before needing to take a break. (AR 713.) Plaintiff did fill out the first page of the function report. (AR 715.) Plaintiff had several people help her fill out her application. (AR 716.)

Plaintiff will go grocery shopping occasionally. (AR 713.) She goes to church on Sundays about twice a month. (AR 713.) Her family will come to visit. (AR 713.) She will go visit them only seldomly. (AR 713.) It has been a very long time since Plaintiff went to a movie. (AR 713.) It is not worth having to go up the stairs, find somewhere to sit, and then have to sit. (AR 715.)

Plaintiff has trouble making decisions when her blood sugar is off. (AR 714.) She tries to check her blood sugar. (AR 714.) Plaintiff can fall asleep but does not stay asleep long. (AR 714.) She tries to do some stretching. (AR 714.) She has a ball that she uses on her back on the ground and it helps. (AR 714.) The side effects from Plaintiff's medication have diminished, but if she does not take them she will have side effects. (AR 714.)

David M. Dettmer, a vocational expert ("VE") also testified at the hearing. (AR 718-726.)

B.    ALJ Findings

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 10, 2011.

- Plaintiff has the following severe impairments: carpal tunnel syndrome status post bilateral release surgery, acromioclavicular joint separation of the right shoulder, tendonitis of the right shoulder, osteoarthritis of the left shoulder, and degenerative disc disease of the lumbar spine.

- Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except with the following limitations. Plaintiff can lift, carry, push or pull 10 pounds frequently and 20 pounds occasionally; sit, stand, and walk for six hours each; frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; and can frequently handle and finger bilaterally.

- Plaintiff is capable of performing past relevant work as a preschool teacher and as a home health aide. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from June 10, 2011, through the date of this decision.

(AR 22-34.[2])

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step

---

[2] The Court notes that the ALJ's opinion is not in correct page number order in the opinion with page 9 of the opinion following page 10 of the opinion.

sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520, Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting

Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ improperly rejected the medical opinions of her treating providers, improperly rejected her symptom testimony and the testimony of her sister, and that the step four and step five findings are not supported by substantial evidence.

**A.** **Physician Testimony**

1. Arguments of the Parties

Plaintiff argues that the ALJ erred by rejecting the opinion of her treating physicians, Dr. Blacketer and Nurse Practitioner ("NP") Roseland. Plaintiff contends that the ALJ erred in rejecting Dr. Blacketer's opinion because it is clear that Dr. Blacketer worked for Livingston Medical Group where Plaintiff received the majority of her medical treatment. Plaintiff also argues that none of Plaintiff's activities are inconsistent with Dr. Blacketer's opinion. Plaintiff states that Dr. Blacketer listed the clinical signs and objective findings on which her opinion was based and the ALJ improperly asserted that Dr. Blacketer's opinion relied heavily on Plaintiff's subjective complaints rather than her professional judgment. Plaintiff contends that the ALJ erred by considering her conservative treatment because sometimes conservative treatment does not indicate that Plaintiff had no limitations in her work related functioning.

Similarly, Plaintiff argues that the ALJ erred in evaluating the opinion of NP Roseland concerning her mental impairments because the activities that she performed are not performed with the same duration and quality that can would be required for fulltime work activity. Plaintiff contends that her mild improvement was taken out of context and the ALJ substituted her opinion for that of her treating provider. Plaintiff states that the ALJ erred by discounting both NP Roseland's mental and physical limitations stating that they relied heavily on Plaintiff's

8

subjective complaints.  Plaintiff also contends that the ALJ erred by giving greater weight to the opinion of the consultative examiner, Dr. Rios, who only saw Plaintiff on a single occasion over that of NP Roseland who treated Plaintiff for years.

Defendant counters that the ALJ presented a lengthy summary of both Dr. Blacketer's and NP Roseland's opinions and that the ALJ properly considered all the medical opinions in the record.  Defendant argues that the ALJ properly found that Dr. Blacketer's opinion contained little evidentiary support.  Defendant contends that the ALJ repeatedly pointed out that Dr. Blacketer cited to Plaintiff's subjective symptoms as support for the opinion and Plaintiff's symptom testimony was properly found to be not credible.  Further, Defendant argues that the ALJ properly considered that Plaintiff's treatment was provided by Social Worker Guillen, NP Roseland and Dr. Venkatapathy and there was a lack of treatment relationship between Plaintiff and Dr. Blacketer.  Finally, Defendant points out that the ALJ properly found that the extreme limitations opined were contrary to the medical record showing routine, conservative treatment, symptom improvement with treatment, Plaintiff's choice to stop taking pain medication, and her ability to perform a range of daily activities and the reports of the consultative examiner and the agency physicians.

Defendant argues that the ALJ properly found that NP Roseland's opinion was explicitly solicited by Plaintiff, completed at least in part by information provided by Plaintiff, and was inconsistent with the medical record as a whole.  Additionally, Defendant argues that the benign mental findings in the record are consistent with Dr. Cohn's mental status examination findings.

2.    Legal Standard for Medical Opinions

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject

it by providing specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

### 3. ALJ's Discussion of Medical Record

In determining whether Plaintiff had a severe mental impairment at step two, the ALJ discussed Plaintiff's mental health treatment. (AR 23.) The ALJ noted that Plaintiff had been diagnosed with depression and anxiety and had been prescribed psychotropic medications by her physicians. (AR 23.) Plaintiff began psychiatric counseling with a therapist in August 2013. (AR 23.)

> During counseling sessions, the claimant endorsed a number of recent psychosocial stressors since 2011 that included the loss of housing, family, and employment. However, with compliance with medication treatment and counseling, the claimant subjectively reported overall improvement in her symptoms and this improvement was objectively demonstrated through improved mental status findings and Global Assessment of Functioning ("GAF") scores [AR 365, 366, 374-376; 435-436, 594-598, 604-614; 620-622, 628-635, 646-653, 658-678.] The record does not reflect that the claimant required or received further mental health treatment for her symptoms. Additionally, despite these medically determinable impairments, I note that the claimant retained the ability to stay active during the day by running errands, cleaning, rearranging the furniture, and walking on the treadmill [AR 365-366, 677].

(AR 23.)

The ALJ read and considered the treatment records of Plaintiff's treating therapist, Leticia Guillen, MSW. (AR 24.) Plaintiff was assessed with a GAF of 50 during her initial visit on August 29, 2013, but on October 10, 2013, she was subsequently assessed with a GAF score of 61, indicating mild symptoms or limitations. (AR 24, 365-366, 374-376.) The ALJ noted that these were just snapshot of Plaintiff's of impaired and improved behavior and gave greater weight to the objective details and chronology of the record which more accurately described

Plaintiff's impairments and limitations. (AR 25.) However, the ALJ found that the GAF scores were overall consistent with the evidence in the record as a whole which includes objective and subjective noted improvement with treatment, mental status findings, and Plaintiff's overall level of care and activities of daily living. (AR 25.)

The ALJ found that Plaintiff's treatment for her back pain was overall routine and conservative, primarily consisting of pain medication. (AR 28.) Physical examination of Plaintiff's back generally, documented tenderness to palpation, some decreased range of motion, but normal gait. (AR 28, 326-327, 370-372, 400-404, 443, 503-506, 599-603, 629, 672.) The ALJ noted that following her carpal tunnel release procedures, treatment records reflected overall improvement and the ability to drive herself to appointments. (AR 28.)

The ALJ considered that the treatment records reflect that Plaintiff had presented for medical treatment with complaints of pain in her hands, shoulders, and back. (AR 29.) Physical examinations documented positive Phalen's and Tinel's signs, bilaterally; atrophy of the small muscles of the bilateral hands; numbness and tingling of the hands; glove hypothesia; tenderness of the spine and shoulders with some pain on range of motion; and a normal gait. (AR 29, 326-327, 370-373, 443, 503-506, 599-603, 629, 672.) Plaintiff had a nerve conduction study in September 2013 that documented very severe carpal tunnel syndrome with absent sensory latency and mild left ulnar compression at the elbow. (AR 29, 406-407.) In March 2014, an x-ray of Plaintiff's shoulders revealed separation of the right acromioclavicular joint and moderate arthritic changes in the left acromioclavicular joint. (AR 29, 418-419.) In December 2014, Plaintiff had x-rays of the lumbosacral spine which revealed significant narrowing of the lowest lumbar disc with endplate osteophytosis and transitional lumbosacral vertebra. (AR 29, 537-538.) In May 2015, an MRI of Plaintiff's lumbar spine revealed broad-based disc protrusions at L4-5 and L5-S1 with only minimal segmental narrowing of the canal and mass effect on the anterior roots, significant narrowing of the L5-S1 intervertebral disc, and mild curvature of the lumbar spine. (AR 29, 535-536.) In August 2015, an MRI of Plaintiff's right shoulder revealed a widened acromioclavicular joint, moderate rotator cuff tendinopathy, but no obvious full-thickness rotator cuff tears and degeneration or small tear of the posterior superior labrum. (AR

29, 541-542.)  Plaintiff's symptoms in her hands, shoulders, and back were treated with pain medications which were overall effective in controlling her right shoulder symptoms, and referrals to specialists who recommended lumbar epidural injections and carpal tunnel releases. (AR 29, 587, 623-627, 680.)  Plaintiff underwent a left carpal tunnel release in June 2015; and a right carpal tunnel release in September 2015; and reported overall improvement following these procedures.  (AR 29, 543-544, 590-591, 599-603.)

Plaintiff had a consultative examination with Dr. Rios on January 22, 2014.  (AR 29, 400-404.)  Dr. Rios observed that Plaintiff had normal station and gait, did not use any assistive devices, moved about the exam room with ease, and was able to get on and off the exam table with minimal difficulties.  (AR 29, 401.)  During the physical examination, Dr. Rios noted that Plaintiff's neck showed good cervical flexion, extension, and mobility without accompanying spasms; negative Spurling's test; and Plaintiff's lower back also showed good lumbar flexion and extension maneuver.  (AR 29, 404.)  Plaintiff reported tenderness on palpation of the left paralumbar area but no accompanying spasms were observed and there was no evidence of nerve root irritation on provocative maneuvers.  (AR 29, 404.)  Straight leg raising was accomplished to 80 degrees bilaterally but with reported pain.  (AR 29, 404.)  Plaintiff's shoulders showed good range of motion without any sign of impingement and her wrists revealed good range of motion with negative Phalen's and Tinel's sign.  (AR 29, 404.)  There was no wasting of the thenar or hypothenar pads; fine and gross finger manipulation was preserved and the distal extremities revealed no ischemic changes or chronic foot ulcerations.  (AR 28, 29, 404.)  Plaintiff had intact motor strength, muscle bulk and tone, sensation, and deep tendon reflexes. (AR 28, 404.)  Dr. Rios diagnosed Plaintiff with degenerative disc disease, chronic tendonitis, and diabetes mellitus.  (AR 28, 404.)

### 4. Dr. Blacketer's Opinion

Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons to reject Dr. Blacketer's opinion.  Initially, Dr. Blacketer's opinion is contradicted by the opinion of Dr. Rios, the consultative examiner.  (AR 400-403 (finding that Plaintiff had no standing and walking limitations; could carry 50 pounds occasionally and 25 pounds frequently; could

1   frequently climb, balance, stoop, kneel, crouch, and crawl; and could perform frequent handling,

2   fingering, and feeling).  Since Dr. Blacketer's opinion is contradicted, the ALJ only needed to

3   provide specific and legitimate reasons to reject the opinion.  Garrison, 759 F.3d at 1012; Ryan

4   v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Bayliss v. Barnhart, 427

5   F.3d 1211, 1216 (9th Cir. 2005).

6       The ALJ considered the November 4, 2015 medical source statement completed by Dr.

7   Blacketer who was Plaintiff's treating physician.  (AR 31, 545-574.)  Dr. Blacketer opined that

8   Plaintiff was limited to less than the full range of sedentary work because of her physical

9   impairments.  (AR 31.)  The ALJ found that specifically, Dr. Blacketer opined that Plaintiff

10  could lift less than ten pounds; stand and walk a total of less than two hours in an eight-hour day;

11  sit about four hours in an eight-hour day; would need to alternate positions; could occasionally

12  twist, stoop, crouch, and climb; had unspecified limitations with regard to reaching, fingering,

13  feeling, and pushing/pulling; should avoid even moderate exposure to extreme cold and all

14  exposure to hazards; and would likely be absent from work more than four times per month.

15  (AR 31, 545-547.)

16      The ALJ gave Dr. Blacketer's opinion little weight finding that it was conclusory,

17  provided little explanation of the clinical evidence relied upon to support the extent to the

18  limitations opined, appeared to rely heavily on Plaintiff's subjective complaints, and was

19  inconsistent with the medical record as a whole.  (AR 32.)  The ALJ also considered that

20  although Dr. Blacketer was Plaintiff's treating physician, Plaintiff's treatment was provided

21  primarily by other providers and it was therefore unclear if the treating relationship with Dr.

22  Blacketer had lasted long enough for Dr. Blacketer to obtain a longitudal picture of Plaintiff's

23  medical condition or if her opinion was based on only sporadic treatment.  (AR 32.)

24      Plaintiff argues that the ALJ improperly rejected Dr. Blacketer's opinion because the

25  record shows that Dr. Blacketer worked for Livingstone Medical Clinic which was where

26  Plaintiff received the majority of her care.  However, the regulation in effect at the time Plaintiff

27  filed her claim provided that the ALJ was to consider the examining relationship; the treatment

28  relationship, including the length of treatment relationship and frequency of examination and the

the nature and extent of the treatment relationship; supportability of the opinion, consistency of the opinion with the medical record and the specialization of the provider. 20 C.F.R. § 404.1527. The ALJ properly considered that while Dr. Blacketer was Plaintiff's treating physician, it was not apparent from the record that she had a treating relationship that provided her with a longitudinal picture of Plaintiff's medical treatment. Plaintiff has pointed to no evidence in the record to dispute this finding and review of the record demonstrates that Plaintiff was primarily treated by a nurse practitioner and occasionally was seen by Dr. Venkatapathy. (AR 386-387, 484-485.) The ALJ properly considered that the record did not demonstrate a longitudinal record of treatment of Plaintiff by Dr. Blacketer.

Plaintiff also contends that the ALJ improperly rejected Dr. Blacketer's opinion because it was conclusory and provided little explanation of the clinical evidence that was relied on to support the limitations. Dr. Blacketer noted that Plaintiff had been diagnosed with broad-based protrusion of at L4-5 and L5-S1, and carpal tunnel that was improving post-surgery. (AR 545.) These findings are supported in the record and therefore do not provide a specific and legitimate reason to reject Dr. Blacketer's opinion. Dr. Blacketer also stated that the clinical findings to support her opinion were pain on palpation and with range of motion of the right shoulder. (AR 545.)

The ALJ noted the medical record did not support the extreme limitations opined by Dr. Blacketer. (AR 32.) Dr. Blacketer based her opinion on finding of pain on palpation and her postural limitations were based on Plaintiff's chronic back pain and tendinopathy of the right shoulder. (AR 546.) However, while the record does demonstrate findings of pain in the back on March 9, 2011, after Plaintiff was involved in an accident (AR 565, 568.) The next record demonstrating any musculoskeletal findings was on July 25, 2013 in which Dr. Qadeer noted on musculoskeletal examination normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. (AR 390.)

Plaintiff next had findings during the examination by Dr. Rios on January 22, 2014. (AR (402-403.) Dr. Rios noted that Plaintiff had tenderness, but good range of motion in both shoulders without any impingement sign. (AR 403.) Plaintiff reported tenderness on palpation

of the left pares lumbar area, but she had good lumbar flexion and extension and there were no spasms or evidence of nerve root compression. (AR 403.)

Plaintiff continued to have unremarkable physical examinations until August 18, 2014. At that time, Plaintiff was noted to have tenderness of the cervical and thoracic spine and lumbar spine. (AR 672.) She had tenderness of the left shoulder and moderate pain with range of motion. (AR 672. She was noted to have bilateral carpal tunnel. (AR 672.) Plaintiff had normal gait and a normal examination of the right shoulder. (AR 672.) Plaintiff is next noted to have tenderness to palpation on the musculature bilateral to the lumbar spine on October 23, 2014. (AR 638.) On November 24, 2014, Plaintiff reported that she had weaned herself off her pain medication and was found to have spinal tenderness and mild pain in the back and right shoulder with range of motion. (AR 629.) Plaintiff had a normal gait. (AR 629.)

Plaintiff was seen on December 18, 2014; March 19, 2015; April 23, 2015; July 10, 2015 and physical examination was unremarkable or there are no examination findings noted. (AR 605, 610, 618, 625.) On March 19, 2015, it was recommended that Plaintiff walk for thirty minutes five times a week and that she not allow two days to go by without walking. (AR 618.)

Plaintiff was next seen on August 6, 2015, and musculoskeletal examination notes "Cervical spine - tender Range of motion mild pain w/motion. Thoracic spine - tenderness. Shoulder - Left tenderness Range of motion moderate pain w/motion. Right tenderness Range of motion moderate pain w/motion." (AR 602.) It was further noted that she had "CMS to L hand and fingers full ROM cap refill less than 3 seconds and warm to touch" and reported that the pain in her left hand had dramatically improved. (AR 602.)

On October 12, 2015, Plaintiff was examined and the record notes straight leg raise positive, bilateral 40 degrees. (AR 680.) Faber's was negative bilateral. (AR 680.) Plaintiff was prescribed Gabapentin. (AR 680.) Plaintiff had an unremarkable examination on October 20, 2015. (AR 597.) On this same date, Plaintiff reported that she was happy after having surgery on her other hand and had much improved mobility and was able to complete her daily activities. (AR 647.)

The record demonstrates that Plaintiff had sporadic findings of tenderness on palpation

and mild pain with range of motion in her back and occasional moderate findings of shoulder pain. Further, as the ALJ found Plaintiff had only received routine and conservative treatment for her back and shoulder pain and voluntarily weaned herself off of her narcotic pain medication. (AR 629.) Plaintiff was prescribed Gabapentin for her pain on October 12, 2015 and at her following visit on October 20, 2015, examination was unremarkable. (AR 680, 597.) The ALJ could reasonably conclude that medical record only demonstrated sporadic findings of pain on palpation and with range of motion which occurred around the time that Plaintiff weaned herself off her pain medication that did not support the limitations opined by Dr. Blacketer.

The ALJ also noted that Plaintiff had carpal tunnel syndrome that was improved post-surgery. (AR 29, 543-544, 590-591, 599, 647.) Substantial evidence supports the ALJ's finding that the limitations opined by Dr. Blacketer are not supported by the medical record. The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

The ALJ also found that Dr. Blacketer's opinion was entitled to little weight because it appeared to rely heavily on Plaintiff's subjective complaints which were found to be not credible. Plaintiff argues that the ALJ did not cite to any evidence that Dr. Blacketer relied on Plaintiff's subjective complaints. Defendant cites to the record in which Plaintiff's complaints are consistent with Dr. Blacketer's opinion. However, the ALJ did not cite any specific evidence that would indicate that she relied primarily on Plaintiff's subjective complaints. The Court finds that this is not a clear and convincing reason to reject Dr. Blacketer's opinion. However, this and any other error in rejecting Dr. Blacketer;s opinion is harmless as the ALJ provided other specific and legitimate reasons to reject Dr. Blacketer's opinion. Burch, 400 F.3d at 679; Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

    5.    Nurse Practitioner Roseland

Plaintiff argues that the ALJ erred by rejecting NP Roseland's opinion of Plaintiff's physical and mental impairments due to Plaintiff's reported activities and reliance upon her subjective complaints. Further, Plaintiff argues that the ALJ erred by relying on the conservative treatment provided for Plaintiff's physical impairments.

Plaintiff argues that the ALJ failed to provide clear and convincing reason's to reject the opinion of NP Roseland.[3] However, pursuant to the regulations in place at the time Plaintiff filed her claim, NP Roseland is an "other medical source." 20 C.F.R. § 404.1513(d) (effective until March 26, 2017). Although there are instances in which a nurse practitioner could be found to be an acceptable medical source, Plaintiff has not challenged the ALJ's finding that NP Roseland is another medical source and has therefore waived the issue. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). As NP Roseland is "an other medical source," the ALJ only need to provide reasons germane to the witness to reject his testimony. Ghanim, 763 F.3d at 1161; Molina, 674 F.3d at 1111.

The ALJ considered the May 2, 2014 medical source statement completed by Plaintiff's treating nurse practitioner Warren Roseland. (AR 25, 522-526.) The ALJ found that NP Roseland opined that Plaintiff had an overall seriously limited ability to make occupational adjustments such as interacting appropriately with others, maintaining concentration, and in her ability to make personal/social adjustments such as demonstrating reliability and behaving appropriately. (AR 25, 523.) NP Roseland opined that Plaintiff had an overall limited but satisfactory ability to understand, remember, and carry out simple and complex job instructions. (AR 25, 523.)

Although NP Roseland is a non-acceptable medical source within the meaning of the Regulations, the ALJ considered his opinion for purposes of understanding how Plaintiff's impairments affect her ability to work in light of the providers treatment relationship with her. (AR 25.) The ALJ found that NP Roseland's opinion is unsupported by and inconsistent with the evidence in the record as a whole and he gave it little weight. (AR 25.) First, the ALJ noted that a review of NP Roseland's treatment record from his May 2, 2014 appointment with Plaintiff indicated that he completed the form at her request in part with information provided by Plaintiff. (AR 25, 429-432.) The ALJ found that the opinion relied quite heavily on Plaintiff's

---

[3] Further, even if NP Roseland was considered as a treating physician his opinion is contradicted by that of Dr. Rios, as described above, and Dr. Cohn who found that Plaintiff had no mental impairments. (AR 681-685.) Therefore, the clear and convincing standard would not apply.

subjective report of symptoms and limitations and uncritically accepted as true most if not all of what Plaintiff reported. (AR 25.) Second, the ALJ found that NP Roseland's opinion is inconsistent with his mental status examination of Plaintiff on May 2, 2014, which documented proper orientation, appropriate mood and affect, and normal insight and judgment. (AR 25.) Third, the ALJ found that the opinion is inconsistent with opinion of Plaintiff's therapist as expressed through her assessment of a GAF score of 6l that Plaintiff had overall only mild symptoms or limitations. (AR 25.) Fourth, the ALJ found that the opinion is overall inconsistent with Plaintiff's objectively and subjectively noted improvement with treatment, mental status findings, Plaintiff's overall level of care, and her extensive activities of daily living. For these reasons, the ALJ gave NP Roseland's opinion little weight. (AR 25.)

As discussed above, the physical limitations opined by NP Roseland that Plaintiff can occasionally lift and carry up to 10 pounds; sit, stand, and walk total of 2 hours each with change of position or break every 15 minutes; simple grasping occasionally, and fine manipulation never; occasional balancing, never climb, stoop, crouch, kneel, or crawl; occasionally reach, handle, feel, pushing and pulling; avoid all exposure to heights, moving machinery, vibrations, dust, fumes, odors, smoke; and avoid concentrated exposure to noise, chemical or temperature extremes (AR 524-525), lack objective findings in the medical record to support such limitations.

As to Plaintiff's mental impairments, NP Roseland found that Plaintiff had fair ability in the use of judgment; in functioning independently; in understanding, remembering and carrying out complex, detailed, or simple job instructions. (AR 528.) Plaintiff had poor ability to relate to co-workers; deal with the public; interact with supervisors; deal with work stress; maintain concentration, persistence and pace; behave in an emotionally stable manner; relate predictable in social situations; and demonstrate reliability. (AR 528.) The ALJ specifically found that the limitations opined were inconsistent with the normal mental findings in the record and her treating providers GAF scores which indicated only mild symptoms. Plaintiff does not point to any specific findings in the record that contradict the ALJ's findings but argues that the ALJ took the treatment record showing mild improvement out of context. Review of the record demonstrates that while Plaintiff had some findings of a depressed mood, (AR 337, 387), she

consistently had unremarkable mental examinations with findings that she was oriented to time, place, person and situation with appropriate mood and affect, and normal thought content, insight and judgment. (AR 328, 356, 358, 383, 431, 439, 443, 498, 597, 602, 610, 618, 625, 630, 638, 672, 682-684.) The record as a whole demonstrates a lack of any objective findings that would support Plaintiff's argument that the ALJ took Plaintiff's mild improvement out of context. Rather, substantial evidence supports the ALJ's finding that the record demonstrates consistently unremarkable mental examinations.

Further, substantial evidence supports the ALJ's finding the medical record on the date that NP Roseland filled out the form notes an unremarkable examination inconsistent with the limitations opined. (AR 431.) A conflict between treatment notes and the treating provider's opinion may constitute an specific and legitimate reason to discredit the opinion of the treating physician or another treating provider. Ghanim, 763 F.3d at 1161; Molina, 674 F.3d at 1111–12.[4] The ALJ provided a germane reason to reject NP Roseland's opinion.

Further, the ALJ noted that NP Roseland's opinion was inconsistent with the GAF scores noted in the records of LSW Guillen, Plaintiff's treating therapist. (AR 25.) "The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.' " McFarland v. Astrue, 288 F.App'x 357, 359 (9th Cir. 2008)(unpublished)[5] (quoting 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000)). However, GAF scores are relevant and may be considered by the ALJ in considering the claimant's general functional abilities. Graham v. Astrue, 385 F.App'x 704, 706 (9th Cir. 2010).

Plaintiff was first seen by LSW Guillen on August 29, 2013. (AR 374-376.) Plaintiff reported difficulty functioning and had a GAF of 50.[6] (AR 374.) Plaintiff was well groomed

---

[4] Even if NP Roseland were to be considered a medical source, conflict with the record is a specific and legitimate reason to reject his opinion. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692–93 (9th Cir. 2009).

[5] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b); see Animal Legal Def. Fund v. Veneman, 490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority").

[6] "A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30,

and oriented to person, place, time, and situation. (AR 375.) Although her mood was depressed her behavior and psychomotor behaviors were unremarkable; and speech and affect were appropriate. (AR 375.) Plaintiff's memory was intact and her intellect was bright. (AR 375.) Plaintiff's sensorium was clear consciousness and she had a cooperative attitude. (AR 375.) Her attention was maintained; and reasoning, impulse control, judgment, and insight were good. (AR 376.) Plaintiff's self-perception was realistic. (AR 376.) Her thought processes were logical; and thought content was unremarkable. (AR 376.) Plaintiff did not exhibit any suicidal or homicidal ideation. (AR 376.)

Plaintiff was seen on October 10, 2013, and was noted to have an elevated mood and more positive outlook on life. She stated that she was staying active during the day running errands, cleaning, rearranging furniture, walking daily, and eating healthy. (AR 365.) Other than an euthymic[7] mood, Plaintiff's mental status findings were similar to the October 29, 2013 visit. (AR 366.) Plaintiff's current GAF was noted to be 61.[8] As the ALJ found, despite Ms. Guillen's notations that Plaintiff appeared depressed, Plaintiff's GAF did not change from 61. (AR 436, 467, 469, 607, 614, 622, 634, 644.) The record notes on April 28, 2014 that Plaintiff feels better when she is regularly taking her medication. However, she wanted to take less to taper herself off her medication. (AR 433.) On July 10, 2015, Plaintiff reported feeling significant improvement of her coping with her depression. (AR 604.) She was noted to have an euthymic mood. (AR 605.) The ALJ provided a germane reason to reject NP Roseland's opinion.

---

2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)). "A score of 40 signifies '[s]ome impairment in reality testing or communication' or 'major impairment in several areas, such as work or school, famility relations, judgment, thinking or mood. . . . .'" Green v. Astrue, No.5:10-cv-01294-AJW, 2011 WL 2785741, at *2 n.2 (C.D. Cal. July 15, 2011) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. Text rev. 2000) (DSM-IV)). "A GAF score in the range of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or coworkers)." Cornelison, 2011 WL 6001698, at 4 n.6 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

[7] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

[8] A GAF score of 61 to 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning. Macias v. Colvin, No. 1:15-CV-00107-SKO, 2016 WL 1224067, at *7 (E.D. Cal. Mar. 29, 2016).

Because the ALJ provided germane reasons to reject the opinion of NP Roseland, the Court declines to address Plaintiff's additional arguments of error in discounting NP Roseland's opinion.

      6.    <u>Consultative Examiners</u>

Plaintiff does not challenge the weight provided to the agency physician or consultative examiner's opinions, but argues that the ALJ erred in comparing the consultative examination by Dr. Rios who only examined her on one occasion with the opinion of NP Roseland who had treated Plaintiff for years. However, where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, both Dr. Rios and Dr. Cohn examined Plaintiff and made independent clinical findings that differed from those of NP Roseland. The ALJ properly considered the findings of Dr. Rios and Dr. Cohn.

The ALJ gave partial weight to the opinion of Dr. Cohn because it was based on a one time evaluation and was not based on a longitudinal picture of Plaintiff's mental health history. (AR 24.) The ALJ found that Dr. Cohn's assessment that Plaintiff does not have a medically determinable mental impairment was inconsistent with the evidence in the record that Plaintiff had been diagnosed with depression and anxiety, had been prescribed psychotropic medication for her symptoms, and had participated in regular counseling. (AR 24.) The ALJ gave little weight to Dr. Cohn's opinion that Plaintiff did not have a determinable mental impairment. (AR 24.) However, the ALJ found that Dr. Cohn's finding that Plaintiff's mental impairments do not impose more than minimal mental limitations was consistent with the record as a whole and was given some weight. (AR 24.)

Similarly, the ALJ gave partial weight to the opinion of Dr. Rios. (AR 30.) The ALJ considered that Dr. Rios' opinion was based on his examination of Plaintiff, a thorough oral history provided by Plaintiff at the time of examination, and observations of Plaintiff during the examination. (AR 30.) The opinion included a detailed discussion of the evidence reviewed and

relied upon and concerned Dr. Rios' area of expertise as a Board Certified Internist. (AR 30.) However, the ALJ noted that Dr. Rios indicated that he did not have Plaintiff's medical records for review prior to issuing his opinion, so the ALJ found that the opinion that Plaintiff can frequently climb ramps and stairs, stoop, kneel, crouch, crawl, handle and finger was consistent with the evidence in the record as a whole and the ALJ gave it great weight. (AR 30.) However, the ALJ found that the remainder of the opinion was entitled to little weight because it was inconsistent with the medical record as a whole which indicated that Plaintiff had greater limitations than assessed by Dr. Rios. (AR 30.) The ALJ cited Plaintiff's reports of side effects from her medications, the persistence of her alleged symptoms, and her subjective statements concerning her difficulties with lifting. (AR 30.)

The ALJ properly considered the opinions of the consultative examiners in determining Plaintiff's residual functional capacity.

### B.  Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony. Plaintiff contends that the ALJ singled out a few periods of temporary well-being form a period of sustained impairment in an attempt to discredit Plaintiff. Plaintiff states that the record establishes that she cannot sustain activity for a full work day and work week. Plaintiff argues that her daily activities are not extensive and do not demonstrate an ability to sustain even sedentary activity. Further, Plaintiff argues that she stopped taking pain medication because of her fear of becoming addicted to the medication.

Defendant counters that the ALJ provided proper reasons to reject Plaintiff's symptoms testimony. Defendant points out that the ALJ discussed that Plaintiff engaged in a wide range of activities that were inconsistent with her allegations of total disability. Further, the ALJ considered that, despite Plaintiff's complaints of disabling pain, she voluntarily discontinued her narcotic pain medication and used only Tylenol for pain. Defendant argues that Plaintiff's minimal use of pain medication and voluntary cessation suggest a lower level of both pain and functional limitation. Defendant also argues that the ALJ properly considered that Plaintiff's symptom complaints were inconsistent with the medical record which failed to demonstrate

physical examination findings consistent with total disability.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn, 495 F.3d at 635 (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina, 674 F.3d at 1112. The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that her statements regarding the intensity, persistence, and limiting effects of the symptoms was not entirely consistent with the medical evidence and the other evidence in the record. (AR 28.) The ALJ considered Plaintiff's testimony that she is unable to perform basic work activities due to her carpal tunnel syndrome, back injury, arthritis to the spine and shoulder, and tendonitis. (AR 27, 225, 254-255, 258, 300, 304, 311.) Plaintiff identified her primary symptoms as pain in her arms, hands, shoulders, and back as well as loss of sensation in her hands. (AR 27.)

> Because of her symptoms, the claimant alleges she has difficulty lifting more than a gallon of milk, standing, walking more than about 15 minutes at a time, squatting, bending, kneeling, climbing stairs, opening doorknobs, fastening clothing, brushing her teeth or hair, writing, grasping, reaching, using her hands, completing tasks, and sleeping through the night. However, she reports that she is able to walk the dog, prepare meals, take out the trash, make beds, fold laundry, do the dishes, drive a car, shop in stores for groceries, unload groceries, go to church, pay bills, count change, handle a savings account, use a checkbook, read, and visit with family. The claimant reports that her symptoms have been treated with medications, bilateral carpal tunnel release procedures, and wrist braces. However, the medications caused side effects that included dizziness [AR 225, 244-252, 258, 262, 264-267, 270, 306, 682.]

(AR 27.)

The ALJ found that Plaintiff's daily activity were not as limited as one would expect given her allegations of disabling pain. (AR 28.) "Specifically, the claimant has endorsed the ability to attend to her personal hygiene, prepare meals, take out the trash, make beds, fold laundry, do the dishes, drive a car, shop for groceries, go to church, pay bills, count change, handle a savings account, use a checkbook, read, watch television." (AR 244-252, 265-267, 270, 682.) Further, Plaintiff stated that she stays active during the day running errands, cleaning, arranging furniture, helping her sister with her brother-in-law's care, and walking on a treadmill. (AR 28, 365, 448.)

The ALJ further considered that Plaintiff's treatment had been overall routine and conservative and consisted primarily of medication. (AR 28.) Physical examination of her back

generally demonstrated tenderness to palpation and some decreased range of motion but a normal gait. (AR 28.) Although narcotic pain medication helped to manage her symptoms, Plaintiff choose not to use the medication and to use Tylenol to treat her symptoms. (AR 28, 628.) The ALJ found this was inconsistent with Plaintiff's allegations regarding her limitations due to her symptoms. (AR 28.)

The ALJ also found that the treatment records reflect that Plaintiff reported overall improvement following the carpal tunnel release procedures and that she had the ability to drive herself to appointments which was further evidence that was inconsistent with her allegations. (AR 28.)

The ALJ noted that although Plaintiff's medication helped to manage her symptoms she chose not to use it and to use Tylenol to manage her symptoms. The ALJ may properly rely on " 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. Molina, 674 F.3d at 1113. Plaintiff argues that since she explained that she was afraid of becoming addicted to the medication, the ALJ erred in considering her discontinuing her pain medication in discounting her symptom testimony. At the hearing, Plaintiff was asked about why she stopped taking her medication.

> Q All right. Why are you not taking pain medication any longer?
> A Because I wanted to be off of it. I see the -- I see so many people that have so many problems and I wanted to take a break from it.
> Q Okay.
> A-I didn't want to --
> Q Are you afraid of being addicted to pain medication?
> A I know someone in my family who is.
> Q Okay. So how long has it been since you stopped taking the pain medication?
> A For a little over a year.

(AR 704.) While Plaintiff now argues that she stopped taking her pain medication because she was afraid of becoming addicted to it, she never actually stated she stopped taking medication due to fear of becoming addicted. Further, as discussed above, on April 28, 2014, Plaintiff informed her treating provider that she feels better when she is regularly taking her medication; however, she wanted to take less to taper herself off her medication. (AR 433.) On November 24, 2014, Plaintiff told her treating provider that she had weaned herself off of Norco and did not want to take pain medication anymore because she wanted to feel normal. (AR 628.) Plaintiff

1 was using an old prescription for anxiety at times which seemed to help. (AR 628.)

2 Plaintiff had been taking medication to treat her pain symptoms for over 20 years. (AR

3 376.) While Plaintiff now argues that she stopped taking the medication because she was afraid

4 that she would become addicted, the fact is that she had been taking the medication for an

5 extended period of time without any evidence of concern from her treating providers that she

6 was addicted to the medication. Based on review of the objective findings in the record, the ALJ

7 could reasonably find that the medication had been controlling Plaintiff's pain symptoms and her

8 decision to stop taking the medication detracted from her allegations regarding the frequency and

9 severity of her pain. The ALJ properly considered that Plaintiff had voluntarily stopped taking

10 her medication in determining the credibility of her symptom testimony.

11 The ALJ also found that Plaintiff had received generally conservative treatment for her

12 alleged impairments. Plaintiff argues that the fact that she only received medication should not

13 count against her credibility as sometimes conservative treatment is the only available treatment

14 for an impairment and she did not need surgery for her back and shoulder. However, while there

15 was a referral for epidural injections at one time, there is no evidence that Plaintiff received

16 epidural injections, was referred to a pain clinic or physical therapy or to a specialist to

17 determine if Plaintiff's shoulder and back impairments would be helped by more aggressive

18 treatment. The ALJ properly considered that fact that Plaintiff was only provided conservative

19 treatment for her back and shoulder in finding that her symptom complaints were not credible.

20 Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the

21 severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).

22 The ALJ also noted that Plaintiff's reported activities were inconsistent with her

23 allegations of disabling pain. Plaintiff argues that her daily activities do not show that she is able

24 to do sustained work activity. However, there are two ways for an ALJ to "use daily activities to

25 form the basis of an adverse credibility determination: if the claimant's activity contradicts his

26 testimony or if the claimant's activity meets the threshold for transferable work skills." Phillips

27 v. Colvin, 61 F.Supp.3d 925, 944 (N.D. Cal. 2014). Here, the ALJ found that the record

28 demonstrates that Plaintiff participated in a wide variety of daily activities, although she did state

that some of the activities were done in small bursts and she had to rest between activities. But Plaintiff also reported that she was keeping active at home doing chores, running errands, moving furniture, walking, and helping to take care of her brother-in-law which the ALJ could reasonably find are inconsistent with her allegations regarding her functional limitations. (AR 365, 448, 682.) The ALJ properly considered that Plaintiff's reports of her daily activities were inconsistent with her symptom complaints.

The ALJ also found that Plaintiff's symptom testimony was not consistent with the objective findings in the medical record. The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). As discussed above, the medical record does not support Plaintiff's allegations of disabling pain and mental limitations and generally notes unremarkable physical examination and mental status findings.

The ALJ provided clear and convincing reasons that are supported by substantial evidence in the record to find Plaintiff's symptom testimony not credible.

### C. Lay Witness Testimony

Plaintiff contends that the ALJ erred by rejecting her sister's testimony. Plaintiff contends that there is no reliable evidence to support a conclusion contrary to the testimony and the ALJ did not provide germane reasons to reject the testimony.

Defendant counters that the ALJ properly discredited the lay witness testimony for the same reasons that Plaintiff's symptom testimony was found to be not credible and the ALJ found that the testimony was not consistent with the record as a whole.

"In determining whether a claimant is disabled, an ALJ must consider lay witness

testimony concerning a claimant's ability to work." Stout, 454 F.3d R 1053; 20 C.F.R. § 404.1513(b)(4). "Lay witness testimony is competent evidence and cannot be disregarded without comment." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony. Stout, 454 F.3d at 1056. If the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible. Molina, 674 F.3d at 1114.

The ALJ also considered the third-party function report of Plaintiff's sister, Beth Brown. (AR 29, 233-241.) The ALJ found that the report was consistent with Plaintiff's subjective statements other than that Ms. Brown stated that Plaintiff's symptoms were so severe in the mornings that Plaintiff could not walk down the hallway and needed to have her breakfast brought to her. (AR 29.) The ALJ found that Ms. Brown's testimony was not fully supported as it was not consistent with the record as whole for the same reasons that Plaintiff's testimony was not supported. (AR 28.)

An ALJ may reject lay witness testimony that conflicts with the medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Bayliss, 427 F.3d at 1218. Here, the ALJ found that Plaintiff's testimony and Ms. Brown's similar testimony was not consistent with the medical evidence and that is a germane reason to reject the testimony of Ms. Brown.

### D. Step Four Finding that Plaintiff Can Perform Past Relevant Work

Plaintiff contends that the ALJ erred at step four because the ALJ found that Plaintiff was limited to a reduced range of light work and the home health aide job was medium and semi-skilled. Defendant counters that the VE testified that he personally observed the home health aide position performed at the light level and that Plaintiff does not challenge the expert's testimony regarding his observations nor the sufficiency of the evidence. Further, Defendant argues that Plaintiff has not challenged that the position of preschool teacher was improperly identified and therefore the ALJ's step four determination is supported by substantial evidence even assuming an error in identifying the home health aide position as past relevant work that

Plaintiff can perform.

At Step Four, the ALJ assesses the claimant's "residual functional capacity," which is defined as the most that a claimant can do despite the "physical and mental limitations" caused by his impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). The ALJ first uses the residual functional capacity to determine if the claimant is able to perform past relevant work. 20 C.F.R. § 404.1545(a)(5)(i). The claimant bears the burden of proof at step four to prove that she cannot perform her past relevant work, but the ALJ still has a duty to make the requisite factual findings to support the conclusion. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008). The ALJ does this by looking at the claimant's residual functional capacity and the physical and mental demands of the past relevant work. Pinto, 249 F.3d at 844. To be able to perform past relevant work, the claimant must be able to perform "[t]he actual functional demands and job duties of a particular past relevant job;" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." Id. "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Id.

Plaintiff's argument that the residual functional capacity assessment is not supported by the record is based on the argument that the ALJ improperly considered the opinions of Dr. Blacketer and NP Roseland and improperly rejected her symptom testimony and the testimony of her third party witness. Having found that the ALJ properly considered the challenged evidence, the Court finds that Plaintiff has failed to establish that the residual functional capacity does not reflect the most that she can do despite the limitations from her impairments and symptoms.

The ALJ found that Plaintiff was able to perform her past relevant work as a preschool teacher and as a home health aide. (AR 32.) In making this finding, the ALJ found that the jobs of preschool teacher and home health aide were past relevant work because they had been performed within fifteen years of the date of the decision, for a sufficient time for Plaintiff to have learned and performed the activities, and at a level of substantial gainful activity. (AR 33.) The ALJ considered that the VE had testified that an individual of the same age, education, work

experience, and residual functional capacity as Plaintiff would be able to perform her past relevant work as a preschool teacher as generally performed in the regional and national economy, but not as actually performed by Plaintiff. (AR 33.) The VE had testified that this same individual would be able to perform the job to home health aide as commonly performed, but not as actually performed by Plaintiff. (AR 33.)

Plaintiff does not challenge the ALJ's finding that she is able to perform her past relevant work as a preschool teacher. Accordingly, even if the ALJ erred by finding that Plaintiff could perform her past relevant work as a home health aide any such error would be harmless because the ALJ has identified prior past work that Plaintiff can perform. If a claimant is able to perform her past relevant work, then she is not disabled. Lewis, 236 F.3d at 515; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).

**E.      Step Five Finding if Plaintiff Can Perform Other Jobs that Exist in Economy**

Plaintiff argues that the ALJ erred by not identifying the skills that would be transferrable from her prior job as a preschool teacher to the position of teacher's aide. Defendant counters that the ALJ found that Plaintiff was able to do her past relevant work, and therefore, it is irrelevant whether transferable job skills were addressed.

Only if the ALJ finds that a claimant is unable to perform past relevant work does she proceed to determine if there is any other work that the claimant can perform in the national economy. 20 C.F.R. § 404.1545(a)(5)(ii); Carmickle, 533 F.3d at 1166-67. Because the ALJ found that Plaintiff can perform her past relevant work, the ALJ's decision was resolved at step four and no finding of transferability of job skills was required. Stout, 454 F.3d at 1055 (error that occurred in a procedure or step that ALJ was not required to perform is harmless); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (since the ALJ had found that claimant was able to return to past work the vocational expert's testimony on other jobs was unnecessary).

/ / /

/ / /

/ / /

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in evaluating the opinions of her treating providers or in assessing the credibility of Plaintiff and the third party witness. Even assuming an error in finding that Plaintiff was able to perform her past relevant work as home health aide, it would be harmless as the ALJ found other past relevant work that Plaintiff can perform and since the ALJ found that Plaintiff can perform her past relevant work any error in failing to address transferability of job skills would be harmless.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Deborah P. Casey. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **June 28, 2019**

UNITED STATES MAGISTRATE JUDGE